## CARR v. CLOUGH.

A sale of personal property made by an infant, without fraud, may be rescinded by him before arriving at full age.

If an infant rescinds a contract made by him for the sale of personal property, and seeks to reclaim the property or its value, he must restore or offer to restore the consideration received, before he can sustain an action for the property sold.

Where a minor exchanged horses with an adult without fraud—*Held*, that he might rescind the contract before arriving at the age of twenty-one years, but that he could not reclaim the horse parted with by him or recover its value, without first restoring or offering to restore to the adult the horse he had received from him. *Held, also*, that after restoring or offering to restore the horse received by him, he could maintain trover for the one parted with by himself, by showing a conversion.

Where a contract is fully executed for a sale of personal property by an infant to an adult, and the property is delivered, the adult has the right to the property until the contract is rescinded, and a right to make a *bona fide* sale of the same before the rescission; and if such a sale be made by the adult, trover will not lie against him for the property.

A demand and refusal, merely, do not constitute a conversion, if the party on whom the demand is made is without fault, and has not the power of compliance.

TROVER for a horse. The action was commenced December 3d, 1851. It appeared in evidence that the plaintiff and defendant, about the first of October, 1850, exchanged horses; and that upon the exchange, the plaintiff, a minor, being the owner of the horse in question, delivered the same to the defendant in exchange for a mare, which the defendant delivered to the plaintiff; the defendant at the same time agreeing to pay the plaintiff the sum of $10 on the next day.

On the Monday next after the exchange, the plaintiff told the defendant he wanted to trade back, and the defendant said he would not do it unless the plaintiff would pay him $15. This took place at the house of the defendant; the mare was not present, and no offer was there made to return her. The defendant then told the plaintiff that he would

come up the next morning and pay the boot; but he did not do it.

On the second day of December, 1850, the plaintiff went to the house of the defendant, taking the mare with him, and offered to return her to the defendant, and informed him that he would not abide by the trade, and requested the defendant to deliver him the horse in controversy. But the defendant refused to do it, saying that he would not let him have the horse, and would not receive back the mare. He assigned no reason for the refusal beyond what is heretofore stated. The mare was at that time in as good condition, and of as great value, as at the date of the exchange.

The defendant had sold the horse before the second day of December, when the plaintiff offered to return the mare.

A verdict was taken, by consent, for the plaintiff, for the value of the horse, and interest from the second day of December, 1850; and it was agreed that judgment should be rendered thereon, or the verdict set aside and a new trial granted, according to the opinion of this court upon the foregoing facts.

*Edes*, with whom was *Freeman & McClure*, for the defendant.

The contract between the parties was not void, but voidable only. Contracts that take effect by manual delivery, carry usually an interest, and not a mere power. Such, when made by an infant, whether the interest pass to or from him, are in general not void, but voidable. All contracts that have a semblance of benefit to an infant are voidable only. *Roberts* v. *Wiggin*, 1 N. H. Rep. 74; *Oliver & a.* v. *Houdlett*, 13 Mass. Rep. 239; *Badger* v. *Phinney*, 15 Mass. Rep. 359; *Allen* v. *Allen*, 2 Drury & Warren's Rep. 307; Bac. Abr. Infancy and Age, 603, 4; 2 Kent's Com. 236. And such sale is valid until rescinded. 15 Mass. Rep. 363.

The sale of the horse, then, by the defendant, before the infant, the plaintiff, had rescinded his contract, as in this

case, was not wrong. It neither violated any duty or moral or legal principle, and could not constitute a conversion. To constitute a conversion the act must be wrongful. 1 Chitty Pl. 149.

The plaintiff, before he rescinded the contract, had neither an actual possession of the horse, nor the right of possession, and to sustain his action he must have one or the other at the time of the conversion. 1 Chitty Pl. 151, 154; *Jones* v. *Sinclair*, 2 N. H. Rep. 319; *Odiorne* v. *Colley*, 2 N. H. Rep. 66.

The demand and refusal, after the sale of the horse by the defendant, did not constitute a conversion. The horse had gone out of his power, and he could not deliver him. A demand and refusal will not constitute a conversion, if the party have not the power of complying. The demand and refusal are not an actual conversion, but only evidence of a conversion. To make a demand and refusal sufficient evidence of a conversion, the party, when he refuses, must have it in his power to deliver up or retain the article. *White* v. *Phelps*, 12 N. H. Rep. 385; 2 Phill. on Ev. 119, chap. 10; *Young* v. *Walker*, 12 N. H. Rep. 502; *Robinson* v. *Burleigh*, 5 N. H. Rep. 225; *Kelsey* v. *Griswold*, 6 Barbour's Rep. 436.

If an infant sells an article to an adult, and receives payment therefor, he may nevertheless reclaim it, upon tendering the price which was paid for it, but he cannot reclaim the article without offering to refund the money. If, however, the adult has parted with the article and cannot resume the possession of it, he is not responsible for it. Story on Sales, §§ 21, 25.

We say then: 1. That the contract was not void, but voidable only.

2. That the contract until rescinded was valid, and that a sale of the horse, before it was rescinded, was not wrongful, and was not a conversion; that until the rescinding of the contract the plaintiff had neither the possession of the

horse, nor the right of possession, and therefore cannot maintain trover on account of the sale.

3. That the defendant in selling the horse did not perform a wrongful act, and therefore the sale was no conversion.

4. That the defendant having sold the horse, and not having it in his power to deliver him at the time of the demand and refusal, the demand and refusal was neither a conversion nor evidence of a conversion; and therefore there was in this case no conversion, and trover cannot lie; that the action, if any will lie, should have been a special one on the case. This would be much more for the furtherance of justice, because the plaintiff has the horse of the defendant, or the proceeds of it, which he got in exchange for the horse demanded; and in trover, if the verdict stands, he will recover the value of the horse he parted with as damages, and thus will have the value of both horses. But in case, he would only recover the excess in value of the horse he parted with, over the one he retains. Where a person lawfully comes into possesion of the property of another, and has parted with the same previous to the making of a demand by the owner, the remedy of the owner against such person is not by an action of trover, but by a special action on the case or in assumpsit. *Kelsey* v. *Griswold,* 6 Barb. Rep. 436.

*Burke*, for the plaintiff.

Two grounds seem to exist which entitle the plaintiff to recover.

1. There was no bargain completed between the parties. The plaintiff agreed to exchange his horse for the defendant's and $10 boot; which sum was to be paid the next day after the contract. It does not appear that the defendant has ever paid the boot, or offered to pay it. The contract, therefore, was never executed on his part. It was, in substance, as if no contract had been made, and consequently

the plaintiff, on this ground, had a right to regard it as a nullity, and recover back his property. The consideration in fact failed. He was to deliver his horse and ten dollars in money to the plaintiff, as the consideration of the exchange, which he did not do. Therefore the bargain between them was never executed, and the defendant derived no title to the plaintiff's horse.

2. But the main ground on which the plaintiff rests his right to recover in this case, is infancy. An infant cannot make a contract which will be binding upon him, except for necessaries. He has not the capacity to contract, and hence the law steps in and protects him from all bargains which are manifestly to his injury, and it permits him to avoid any contract he may make, except for necessaries, even if such contract be for his benefit. This doctrine is sustained by the whole current of authorities. Chitty on Contracts, 107, 113; Macpherson on Infants, 477; Brigham on Infancy, 8.

Some contracts made by infants are binding; some are void; and others are voidable only, such as contracts that may be for the benefit of the infant. *Fridge* v. *The State*, 3 Gill & Johns. Rep. 115. Therefore there can be no doubt, that if there was, in fact, a contract between the parties in this case, complete and executed, the plaintiff had the right to avoid it on his part. And this position does not seem to be denied by the counsel for the defendant. He, in substance, admits that the plaintiff had the power to avoid his contract, and did actually avoid it. But, he contends that, being a voidable contract, all acts of the parties while it was a continuing contract were legal and valid, and imposed no liabilities on either. And hence, the defendant having parted with the horse received by him from the plaintiff before the demand and refusal, as found by the case, is not liable in this form of action; but, on the contrary, the action should have been case.

The correctness of this view of the case depends upon the legal consequences which result from the avoidance of a

contract by an infant.   What is the legal consequence of an avoidance or rescinding of a contract by an infant? It remits the parties, and especially the infant, back to their original rights.   After the contract is avoided by the infant, the parties, as a general rule, stand in the same relation to each other as if no contract had been made.   If this be not the legal effect of such avoidance, then the law does not give that protection to infants which it promises.   And the sound authorities—not such as W. W. Story on Contracts, cited by the counsel—sustain this view of the law.

The term " voidable " applies only to that description of contracts which may be disaffirmed or ratified by the infant. Bingham on Infancy, 45.   The contract of an infant, when not to his injury, is not absolutely void, for then it could not be ratified.   But it may become void by his disaffirmance, and when it does thus become void, it is not void from the time of such disaffirmance only, but from the beginning. The defect is in it *ab initio,* and when it is avoided on the ground of that defect, it is void *ab initio.*   Thus a promissory note given by an infant is a voidable contract, but where it is avoided by the infant, it is from the beginning, so far as he is concerned.   Consequently all titles or rights acquired by an adult under a voidable contract with an infant, are imperfect, and liable to be absolutely defeated by the disaffirmance of the contract on the part of the infant.   A feoffment and all other conveyances *in pais* may be avoided by the infant.   Bingham on Infancy, 60, 62.

Consequently, if the grantee or his assignees shall have made any number of conveyances of the estate, or if he shall have deceased and the estate shall have descended to his heirs while the deed was merely voidable, they all, as well as the title by descent, fall to the ground the moment the deed is avoided by him.

If an infant sell or exchange his personal property, he may at any time disaffirm the sale or exchange, and sue for and recover the value of his property so sold or exchanged, al-

Carr *v.* Clough.

though the infant by such sale or exchange procured necessaries. *Grace* v. *Hale*, 2 Humphrey's Rep. 27. A contract by an infant for the sale of personal property, may be rescinded by him before he arrives at full age. *Shipman* v. *Horton*, 17 Conn. Rep. 481. · And after such contract has been rescinded by the infant, and the title to the property has thus become revested in him, an action of trespass cannot be sustained against him for taking such property into his possession.

An infant may avoid even an executed contract for labor, and recover on a .*quantum meruit*. *Abell* v. *Warren*, 4 Vt. Rep. 149. He cannot retain property purchased, and at the same time repudiate the contract of purchase. And where, after an infant becomes of age, he repudiates a purchase made by him in his minority, the title of the property remains in the vender, as between him and the infant. *Ketchen* v. *Lee*, 11 Paige's Rep. 107; *Willis* v. *Twombly*, 13 Mass. Rep. 204.

Where goods are sold to an infant on credit, and he avails himself of his infancy to avoid payment, the vender may reclaim the goods, as having never parted with his property therein. Where the infant avoids his contract he must place the other party in the same situation he was in before the contract was made. *Badger* v. *Phinney*, 15 Mass. Rep. 359.

The principle which results from the authorities cited, is, that where the infant avoids his contract, the title to the property with which he has parted revests in him. And also the title to the property of the party selling to or exchanging with him revests in such party, as between him and an infant. The effect of the avoidance is to put the parties back in the position in which they were prior to the contract. The effect of this principle is salutary, and protects both parties; and if it were not recognized by courts of justice the infant would have very little of that protection which the law promises him. And hence he can avoid all his conveyances of real estate during his minority, or after he be-

comes of full age.   The books contain so many authorities of this kind as to render it hardly necessary to cite them. *Chadbourne* v. *Rachliff,* 17 Shepl. Rep. 354; *Dearborn* v. *Eastman & a.,* 4 N. H. Rep. 441.

Of course, when the infant avoids his deed conveying real estate, the title to the estate reverts back to him, and he can recover it by action of law, although it may have been conveyed an hundred times by others, subsequent to his conveyance and his avoidance of it.

The doctrine, then, that all the acts of the purchaser who contracts with the infant, between the time of purchase and the avoidance of it are valid, because the contract being a voidable one, is, until it is avoided, in full force, cannot be sustained.

The adult, contracting with an infant, does it at his peril. The law presumes that he is acquainted with the rights and privileges, or rather the legal infirmities and incapacities of the infant; and hence it makes him the sufferer rather than the infant, if any one must suffer in consequence of entering into such imperfect contracts.

If this view of the law touching this case be correct, then when Carr avoided the contract of exchange, the title in the horse he put away to the defendant revested in himself. The parties stood in the same relations to each other in reference to the property in question, as they did before the exchange.   And therefore the plaintiff had a right to demand the horse, and if refused, to bring an action of trover to recover its value.

But, the counsel for the defendant argues, that having parted with the property, he could not recover it, and therefore there was, notwithstanding a demand and refusal were proved, no evidence of a conversion; and to sustain this view of the case he cites *White* v. *Phelps,* 12 N. H. Rep. 385.

On an examination of that case it seems to sustain the very opposite view of the law from that contended for by

the defendant. In that case a horse was mortgaged to the plaintiff by one Howe. Howe afterwards sold the horse to one Greenleaf, and Greenleaf subsequently sold it to the defendant, who, knowing of the plaintiff's mortgage, and before the plaintiff demanded the horse, sold it to another person. The judge, trying the cause, directed a verdict for the defendant, on the ground that he had parted with the horse before demand and refusal. This ruling was reversed by the superior court, who held that the absolute sale of a horse which the defendant knew was mortgaged, was in itself a conversion. This authority would seem to be conclusive of the present case.

But what is to be gained by setting aside the verdict in this case? The defendant admits his liability in another form of action. The objection, therefore, is technical, rather than material. But one form of action may be substituted for another. In some cases assumpsit may be brought when the original injury was trespass or other tort. And replevin may be brought when the original taking was lawful, but the detention unlawful. *Badger* v. *Phinney*, 15 Mass. Rep. 362.

There is, however, no necessity for applying these rules to this case. By the avoidance of the contract, the title to the horse revested in the plaintiff, and the pretended sale of the defendant was in itself a conversion. Suppose this pretended sale, which was probably for the very purpose of eluding the claim of the plaintiff, and was to the defendant's father-in-law, had not been made known to the plaintiff until the trial, and it does not appear upon the trial that he knew anything about it, is his action to be thus defeated? Are suits at law, under such circumstances, to be regarded as no more than mere explorations in courts of justice, in order to discover the right forms of remedy? We cannot believe that any such view of the law will be taken by this court.

Carr *v.* Clough.

*Edes*, in reply.

The first position of the plaintiff's counsel, that the bargain was not completed, is not tenable. There was no condition in the bargain. It was completed by the exchange of horses. Carr had nothing further to do, and the $10 was a debt to be paid by Clough in future. This point was not made at the trial.

His second position, that the rescinding of the contract by an infant, made it in all respects void *ab initio*, is not sustained by his authorities. None of them come up to this point. In addition to the authorities cited by us, in our former brief, as bearing upon this point, we desire to refer the court to Bingham on Infancy, 63, note 5; Bing. on Infancy, 65, note 1; *Weeks* v. *Leighton*, 5 N. H. Rep. 343; 8 Taun. 508; *Coy* v. *Hoffman*, 8 Cowen 84; 7 Cowen 84.

In trespass, to make a man a trespasser *ab initio*, he must use an authority which the law gives him, for improper purposes, or do some wrongful act. *Barrett* v. *White*, 3 N. H. Rep. 210; *State* v. *Moore*, 12 N. H. Rep. 42; *Ferrin* v. *Symonds* 11 N. H. Rep. 363. No act of the plaintiff can make the defendant a trespasser *ab initio*. But the plaintiff's counsel says, in effect, that an act of the plaintiff can subject the defendant to an action, without any wrongful act on his part, and make this act, done perhaps months before, and all right at the time, to be wrongful, and give the plaintiff possession, or a right of possession, months before he had either. When the plaintiff delivered his horse to the defendant, he lawfully parted with the possession, and had no right to it till he had returned the defendant's horse, and demanded his. How could this give him an action of trover against the defendant, unless the defendant then had it in his power to deliver the horse he claimed? He had justly parted with it, and could not comply with the demand.

The case of *White* v. *Phelps* recognizes the doctrine in full, that where the defendant has sold and parted with the horse before demanded, the demand and refusal would not

lay the foundation of an action of trover. At the time the defendant sold the horse, the plaintiff had neither the possession nor the right of possession, and *White* v. *Phelps* does not sustain the plaintiff, but the defendant.

As to the third point made by the plaintiff's counsel, that the defendant is liable in some form of action, we do not admit that he is liable in any form; but if he is, we contend that trover cannot be sustained, and that that form of action does not do justice between the parties.

EASTMAN, J. There is no suggestion in this case of any misrepresentation or fraud, on the part of the minor, in entering into the contract between him and the defendant, and nothing tending to show that the defendant was not perfectly aware of the minority of the plaintiff when the exchange of horses took place between them. And the defendant must be presumed to have entered into the contract with a full knowledge of the legal privileges that are extended to infants.

A question is made at the outset, whether the contract between the parties was fully executed or not. In many cases this would be an important inquiry, but in the present case we do not view it as such, and we shall, therefore, treat the contract as an executed one, since we do not regard it as material to the decision of the cause to consider the contract to be of a lower degree, or other than that contended for by the defendant.

There is some conflict in the books as to the question whether an infant can rescind an executed contract before coming of age. Some authorities hold that it cannot be done in any class of contracts; that the infant lacks the legal discretion to do the act of avoidance; while others maintain that it may be done in all; that the privilege would be ineffectual and the infant unprotected without it. Other authorities make a distinction between contracts relating to real estate and those which pertain to per-

sonal property, holding that the deed of an infant cannot be avoided by him till after arriving at full age, while a sale of personal property may be, at any time, either before or after.

The precise question presented here, and that which in fact lies at the foundation of this action, is this: can an infant, during his minority, rescind a sale of personal property made by him, without fraud, after he has delivered the property to the purchaser, for a good consideration, paid by the latter?

In *Roof* v. *Stafford*, 7 Cowen 179, it was expressly held that a sale and delivery of goods by an infant, with his own hand, is not voidable till he comes of age, and so also in regard to his conveyances of real estate. The decision of this case was chiefly founded upon the authority of *Zouch* v. *Parsons*, 3 Burrows, 1794, which was an action of ejectment, the precise question being whether an infant's conveyance by lease and release was absolutely void or only voidable. Lord *Mansfield* examined and reviewed the authorities upon the question, and laid down this rule among others, that an infant cannot avoid his conveyance of lands till the age of twenty-one years. His reasoning was taken as the foundation of the decision of *Roof* v. *Stafford*, and his rule has been adopted in many other cases. But it should be borne in mind that he was discussing the question as applicable to conveyances of real estate, and that the question of sales of personal property was not before him; and hence, although the case may be high authority in contracts affecting real estate, it can have no direct bearing upon those affecting personal property. In many of the decisions, too, which have been made upon the authority of *Zouch* v. *Parsons*, the attention of the court does not appear to have been called to any distinction that may be taken between contracts touching real estate and those pertaining to personal property.

The decision made in *Roof* v. *Stafford* was reversed by

the court of errors, in *Stafford* v. *Roof*, 9 Cowen 626. The
action was trover, originally brought by Stafford, a minor,
in the mayor's court of the city of Albany, for a horse sold
by Stafford to Roof. The mayor's court held that Stafford,
although a minor, could rescind his contract and maintain
the action. Roof brought a writ of error, and the action
was carried to the supreme court, where the decision was
made as reported in 7 Cowen, 179, and where it was held
that Stafford could not avoid the contract till arriving at full
age. From the supreme court the case was carried to the
court of errors by Stafford, and that court held that the ac-
tion would lie before Stafford arrived at the age of twenty-
one, and affirmed the judgment of the mayor's court. *Jones,*
chancellor, said : " The general rule is, that an infant cannot
avoid his contract, executed by himself, and which is, there-
fore, voidable only while he is within age. He lacks legal
discretion to do the act of avoidance. But this rule must
be taken with the distinction that the delay shall not work
unavoidable prejudice to the infant, or the object of his priv-
ilege, which is intended for his protection, would not be an-
swered. When applied to a sale of his property, it must be
his land ; a case in which he may enter and receive the
profits until the power of finally avoiding shall arrive ; and
such was the doctrine of *Zouch* v. *Parsons,* 3 Burr. 1794.
Should the law extend the same doctrine to sales of personal
estate, it would evidently expose him to great loss in many
cases ; and we shall act up to the principle of protection
much more effectually by allowing him to rescind while un-
der age, though he may sometimes misjudge and avoid a
contract which is for his own benefit. The true rule, then,
appears to me to be this : that where the infant can enter
and hold the subject of the sale till his legal age, he shall be
incapable of avoiding until that time ; but where the pos-
session is changed, and there is no legal means to require
and hold it in the mean time, the infant, or his guardian for
him, has the right to exercise the power of rescission imme-

diately." The learned chancellor proceeded also to say that the common law gives no action or other means by which the mere possession of personal property can be reclaimed and held, subject to the right of avoidance ; and the decision that the contract could be avoided during minority was accordingly made.

There is no fact before us involving the question whether a conveyance of real estate may be avoided within age or not, and we need express no opinion in regard to it. But it appears to us that the reasoning in *Stafford* v. *Roof,* so far as the same is applicable to this case, is founded upon correct principles. If the subject of the sale be personal property, and a delivery to, and possession by, the vendee, follows, and there are no legal means to regain the property till the minor arrives at full age, so as to decide whether he will ratify the contract or not, the property may all be wasted and gone, beyond recovery, and in many cases for a very inadequate consideration. In such cases, the principle of protection would be of little use, could it not be exercised before maturity. We lay down the rule, then, that a sale and delivery of personal property by a minor, for a good consideration, but made without fraud by him, may be rescinded by the minor before arriving at full age. *Stafford* v. *Roof,* 9 Cow. 626; *Shipman* v. *Horton & a.* 17 Ct. Rep. 481; *Willis* v. *Twombly,* 13 Mass. Rep. 204; Bing. on Infancy 64, note 5.

But if the infant rescinds the contract, and seeks to recover the article sold by him, he must restore the property or consideration received, before he can maintain his action for the property sold. This is but even handed justice, and a contrary doctrine would oftentimes enable the infant to use his minority for the perpetration of gross fraud. Thus in *Badger* v. *Phinney,* 15 Mass. Rep. 363, *Putnam,* Justice, says, " As to the sale of the goods to the plaintiff, it is sufficient to say that the contract was executed by Rand, the infant. He delivered the goods and received the money for them, and we should have required him to restore the money before

recovering the goods. We must remember that the privilege of infancy is a shield, not a sword." The principle is this: that upon the rescinding of the contract by the infant, the parties shall be restored to their original rights.

Many cases are to be found where this principle has been acted upon, so far as the circumstances would permit, and among them we cite the following: *Ketchen* v. *Lee*, 11 Paige 107; *Hubbard* v. *Cummings*, 1 Greenl. 13; *Taft* v. *Pike*, 14 Vt. Rep. 409; *Badger* v. *Phinney*, 15 Mass. Rep. 362; *Buffington & a.* v. *Gerrish*, 15 Mass. Rep. 156; *Smith* v. *Evans*, 5 Humph. 70; *Holmes* v. *Blogg*, 8 Taun. 508; *Roberts* v. *Wiggin*, 1 N. H. Rep. 73; *Roof* v. *Stafford*, 7 Cow. 182; *Homer* v. *Thwing*, 3 Pick. 492; *Vasse* v. *Smith*, 6 Cranch 231; *Fitis* v. *Hall*, 9 N. H. Rep. 441.

*Badger* v. *Phinney* was replevin, and the precise point decided was this: that where goods are sold to an infant on a credit, and he avails himself of his infancy to avoid payment, the vender may reclaim the goods as having never parted with his property in them. And in *Fitts* v. *Hall* it was held that if an infant disaffirms a contract by which goods have been sold to him, if he has the goods in his possession, and refuses to deliver them to the vender upon a demand for that purpose, trover may be maintained against him for the conversion. The same case also lays down the principle, that where the property has passed from the hands of the infant, trover will not lie, although if there has been fraud practised by the infant, a special action on the case may be sustained.

The doctrine upon this point, as gathered from the weight of authority, and which seems to be founded in good reason, appears to be this: First, that the infant shall not be permitted to rescind his contract, and recover the articles parted with by him, without first restoring the property or consideration received therefor. Second, that in case of sale by an adult to an infant, if the adult demands the payment or consideration promised by the infant, and he disaffirms the con-

tract and refuses payment, or, if suit be brought against him, pleads infancy and avoids the debt, the adult may thereafter, in case the property be in the infant's possession, maintain replevin therefor, or demand the property, and upon refusal, bring trover and recover its value. If, however, the infant has parted with the possession of the property sold him, the adult is remediless, provided there has been no fraud practised. If there has been, a special action on the case may be sustained.

From the principles which we have endeavored to lay down, it follows that upon the rescission of a contract by an infant, and the restoration of the property or consideration received by him, or the offer to restore the same, the infant may maintain a special action on the case for the damages sustained, or may maintain trover upon showing a conversion of the property. By the rescission each party is entitled to his respective property, so far as they themselves are concerned.

It follows, also, in the absence of fraud, where the contract is fully executed, that until the same is rescinded, the adult has the right to the property which he has received, and has the right to make a *bona fide* sale of the same before the rescission.

Assuming, then, that the horse, for the value of which this action was brought, was sold in good faith by the defendant, and its possession parted with, before the formal rescission of the contract by the plaintiff, on the second of December, and assuming, also, that nothing had taken place that would amount to or be evidence of a rescission until that day, this action cannot be sustained; for the contract being executed, and the animal delivered to the defendant by the plaintiff himself, the sale of the horse by the defendant, before the rescission, could not amount to a conversion, since the possession of the defendant was at that time rightful and his control over the property complete. Nor would the plaintiff be aided by the demand and refusal, for

it was made after the defendant, upon the assumption of a *bona fide* sale, had legally parted with the property, and when he had no power to comply with the demand. A demand and refusal merely, are only evidence of a conversion. They do not constitute a conversion, if the party has not the power of compliance. *White* v. *Phelps*, 12 N. H. Rep. 385; *Knapp* v. *Winchester*, 11 Vt. Rep. 351. The demand here, in order to be effectual, would necessarily have to be made before the sale and after the rescission.

The case finds that the horse was sold by the defendant before the second of December, and that there was no formal rescission of the contract until that day, and no demand and refusal till then. Unless, therefore, the evidence was competent to show that the contract was rescinded before the sale, or *that the sale was made* in bad faith by the defendant, or was fictitious, so that the rescission on the second of December, and the demand and refusal on that day, would be effectual, the action of trover cannot lie; and the plaintiff would necessarily be put to his special action on the case.

A court will always prevent a circuity of actions whenever it can be done, and the rights of the parties be substantially preserved. And we think it may be prevented in this case. Here was evidence from which the jury might well find that the sale by the defendant was not made in good faith. In the first place, the defendant did not pay or offer to pay the ten dollars, the difference in the exchange, as he agreed to do, either on the day after the sale, or on the day next succeeding the first interview after the exchange. It would appear as though he retained the money, under the apprehension that the plaintiff would not abide by his bargain. In the next place, he was told by the plaintiff, soon after the exchange, that he wished to trade back. This was sufficient to put him on his guard not to part with the horse, while at the same time it might induce him to sell the animal at once. Again, when the plaintiff went to the house

Carr *v.* Clough.

of the defendant, on the second of December, and taking the mare with him, offered to return her, and informed the defendant that he would not abide by the trade, and request-ed the defendant to deliver him the horse, the defendant re-fused to do it, saying that he would not let him have the horse, and would not receive back the mare; and he assigned no particular reason for this refusal; he gave no intimation that he had sold the horse. Now, if the sale which he had made was free from fraud and valid, if there was nothing dishonest or fictitious about it, he would scarcely have fail-ed to have stated at once that he had sold the animal, and he would most naturally have given that as one reason at least why he could not exchange back. But he makes no mention whatever of the sale. And if, as was said in argu-ment and not denied, the sale was made to the father-in-law of the defendant, it would give a coloring to the trans-action which the jury would be very likely to notice. Tak-ing all the evidence together, we think it entirely competent to show an invalid sale by the defendant, and of course the rescision and the demand and refusal, on the second of December, were good.

We might suggest the inquiry whether, after the defen-dant had refused to trade back, as was done on the Monday succeeding the exchange, it was necessary for the plaintiff to take the mare to the defendant and offer to restore her, in order to complete the rescision of the contract; and whether a sale of the horse, even if made in good faith, would not, after the plaintiff had requested the defendant to trade back, amount to a conversion. But the views which we have expressed render it unnecessary to examine these inquiries. The result to which we have arrived does justice between the parties. It protects the infant and gives to him the value of his horse, while at the same time it, in effect, restores to the defendant the animal which he him-self had parted with.

*Judgment on the verdict.*